ORIGINAL PAPER
RUTLAND SUPERIOR COURT

APR 15 2008

STATE OF VERMONT
RUTLAND COUNTY

| | | |
|---|---|---|
| RICHARD S. BLOOMER | ) | Rutland Superior Court |
| | ) | Docket No. 40-1-08 Rdcv |
| v. | ) | |
| | ) | on appeal from |
| | ) | Docket No. 223-3-07 Rdsc |
| PROCTOR COAL CO. | ) | |

## SMALL CLAIMS COURT APPEAL
### Decision

This case came before the Court on appeal from the Opinion and Decision of the Small Claims Court dated January 16, 2008. Oral argument was heard on March 31, 2008. Appellant Richard S. Bloomer represented himself, and Chris Keyser appeared on behalf of Appellee Proctor Coal Co.

In the Small Claims Court case, Proctor Coal Co. sought judgment of $491.65 plus finance charges on a bill for delivery of heating fuel in October of 2006 to one of Mr. Bloomer's two properties. Mr. Bloomer counterclaimed under the Consumer Fraud Statute for $650.33, the value of oil he claims he was owed under a prior contract, plus treble damages for a total of $2,601.32. An evidentiary hearing was held on December 20, 2007 and January 3, 2008, and a written decision issued on January 16, 2008. Under the Small Claims Court judgment, Proctor Coal was granted judgment for $491.65 plus court costs, and the counterclaim was dismissed. Mr. Bloomer has appealed.

Mr. Bloomer owns two properties in Rutland, a business property on West Street, and a residence on Leonard Street. For the heating seasons from 2001-2005 (fall to 5/31), he had written pre-buy contracts with Proctor Coal, under which he paid a fixed per-gallon price for an estimated number of gallons for the season. The last delivery to West Street was made in March of 2005, and the last delivery to Leonard Street was made in February of 2005. The tanks were not filled by Proctor Coal before the end of the contract year on May 31st. The number of gallons for which Mr. Bloomer had prepaid had not been used, and he ended the season with a credit balance.

In the fall of 2005, there was correspondence between them about the terms of the contract for the coming season. Proctor Coal did not offer a prepaid price for the 2005-2006 season, but instead offered a contract providing for automatic deliveries with a price cap. Mr. Bloomer accepted the contract, but complained about the 2004-2005 year contract.

In the fall of 2006, there was no communication. On October 23, 2006, Proctor Coal made a delivery for which it sent a bill on October 30th for $491.36. Mr. Bloomer responded immediately with a letter stating that since they had made no contract for the year, he was not under any obligation and had made other arrangements for fuel, but

1

assumed that the delivery was made to make up for the deficit in deliveries under the 2004-2005 season contract.

The trial judge found that Mr. Bloomer had never called Proctor Coal to tell them to stop deliveries until after the delivery on October 23, 2006, and that he was obligated to pay for the delivery.

With regard to the counterclaim based on the consumer fraud claim, she concluded that "the contract clearly stated that 'the stable price would remain in effect for contracted gallons or until May 31, 2005, whichever comes first.[']  Plaintiff delivered the pre buy fuel oil until the contract ran out."

Mr. Bloomer claims that the Judge erred in her interpretation of the pre-buy contract in effect during the 2004-2005 season. He argues that when he paid for 3100 gallons at the fixed price of $1.30 per gallon, he had already bought that many gallons, and it was the obligation of Proctor Coal to deliver him 3100 gallons, period, and not to deliver during a subsequent season a lesser number of gallons at a higher price. He argues that in her decision she failed to address either the contract issues or the Consumer Fraud issues in the case.

Relevant terms of the 2004-2005 contract (Defendant's E) are as follows:

"Option 1:  Prepayment.  The gallons of FUEL OIL to be delivered at the Stable Price will be 3100.0.  Based on a Stable Price of $1.3000 your payment is $3,817.28."

"Your contract gallons will be delivered between the date your payment and signed contract is received and May 31, 2005."

"The Stable Price will remain in effect for CONTRACTED GALLONS or until May 31, 2005, whichever comes first.  Gallons delivered over the limit will be charged and payable under the standard terms in effect at the time of delivery."

"All deliveries will be on an automatic basis."

Mr. Bloomer argues that it was Proctor Coal's responsibility to fill the tank before May 31, 2005 with gallons he had already paid for, rather than stop delivering in early spring, and then be able to charge a higher price after May 31, 2005. He also argues that on October 23, 2006, he had no contract in effect, and thus he has no obligation to pay for what Proctor Coal delivered.

The court did not err in concluding that Mr. Bloomer had failed to show a misrepresentation, and thus had not shown that Proctor Coal had engaged in deceptive acts or practices.  The Judge noted that the contract was explicit that the stable price benefit lasted only until the first of: when the total number of contract gallons had been delivered "or" May 31, 2005.  It is also noted that deliveries were explicitly on an automatic basis.  This is sufficient notice to consumers that the contract would be over on

2

May 31, 2005, whether or not all the gallons for which they had secured a fixed price had been consumed. Thus, the court did not err in dismissing the consumer fraud claim. Similarly, Mr. Bloomer's claim that he was owed a certain number of gallons of fuel after May 31, 2005 because he had already paid for them is not supported by the contract language, which is specific that the contract would be over on May 31, 2005. Any credit balance left at that time was a credit balance, which could be applied to future bills.

On Proctor Coal's claim for payment of the $491.65 worth of fuel delivered in October of 2006, Mr. Bloomer has a valid argument that there was no contract in effect between the parties. Mr. Keyser counters that Proctor Coal cannot simply stop delivering where it has routinely delivered before, as it risks causing property damage if people run out of fuel. The Judge appears to have grounded her decision in the fact that Mr. Bloomer paid for all deliveries between the fall of 2005 and the spring of 2006, and never called to stop deliveries; hence, apparently, it was reasonable for Proctor Coal to proceed on the basis that there was a contract between the parties. There was, however, a written contract in effect for the 2005-2006 season, whereas no written or oral contract was made at the beginning of the 2006-2007 season.

Nonetheless, the decision must be affirmed if there is any basis on which it properly rests. In this case, the fuel was delivered, and a benefit was conferred upon Mr. Bloomer, who used the fuel. The trial court decision is properly grounded in the quasi-contract legal theory of "quantum meruit." Under this principle, where one party confers a benefit on another, the benefit was received, and the charge was reasonable, the law implies an obligation to pay, even though the service was not expressly ordered. "The law implies a promise to pay when a party receives a benefit and the retention of the benefit would be inequitable." *Cedric Elec., Inc. v. Shea,* 144 Vt. 85, 86, (1984) (citing *Eddy v. Watson,* 141 Vt. 577, 579 (1982).

## ORDER

For the foregoing reasons, the judgment of the Small Claims Court of January 16, 2008 is *affirmed.*

Dated at Rutland, Vermont this 15th day of April, 2008.

Hon. Mary Miles Teachout
Superior Court Judge

3